UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ESTATE OF JEREMY ISADORE LEVIN**, *et al.*, | Civil Action No. 1:21-cv-00420-JEB |
| **Plaintiffs,** | |
| **v.** | |
| **WELLS FARGO BANK, N.A.,** | |
| **Defendant.** | |
| **(and consolidated cases)** | |

## LEVIN PLAINTIFFS' MOTION TO QUASH OWENS PLAINTIFFS' WRITS OF ATTACHMENT AND TO TRANSFER LEVIN v WELLS FARGO CASE NO. 21-0420 AND CONSOLIDATED CASES

Plaintiffs and Judgment Creditors Estate of Jeremy Isadore Levin, Estate of Lucille Hare Levin, and Suzelle M. Smith, Executrix, Daughter, and Successor in Interest to Jeremy Levin and Dr. Lucille Levin and their Estates ("Levins" or "Levin Plaintiffs" or "Garnishors"), by and through their counsel of record, hereby move this Court for an Order Quashing the Writs of Attachment of James Owens, Judith Mwila, and Rizwan Khaliz (collectively the "Owens Plaintiffs" and the "Owens Writs")[1] and transferring *Estate of Jeremy Levin, et al. v. Wells Fargo*

---

[1] In its Order dated January 31, 2023, the Court consolidated the Owens cases with the Levin cases under Case No. 21-0420. [Dkt. 22.]

*Bank, N.A.*, Case No. 21-0420 and all consolidated cases, including Case Numbers 21-0126, 21-0127, and 21-0128, to the United States District Court for the District of South Dakota ("South Dakota Court").[2]

## I.    THE COURT SHOULD QUASH THE OWENS WRITS ON THE TAIF/NAUTIC BLOCKED ASSETS IN SOUTH DAKOTA

### A.    The Court Should Reconsider the Validity of the Owens' Writs

Federal Rule of Civil Procedure 69 allows a party with a valid interest in property subject to a writ of execution to act to protect that interest. Fed. R. Civ. P. 69; *see also* D.C. Code § 16-551; *see also* D.C. Code § 16-554; *see also, e.g. Levin v. Islamic Republic of Iran*, 523 F. Supp. 3d 14, 19 (D.D.C. 2021), *rev'd on other grounds and remanded sub nom. Est. of Levin v. Wells Fargo Bank, N.A.*, 45 F.4th 416 (D.C. Cir. 2022) (*Levin I*) ("Courts routinely evaluate the validity of writs of attachment de novo when faced with motions to quash.") (citing *Bennet v. Islamic Republic of Iran*, 618 F.3d 19, 21, 393 U.S. App. D.C. 49 (D.C. Cir. 2010) (affirming district court's order granting motion to quash writs of attachment, holding that '[w]hether the properties are subject to attachment is a question of law that we review de novo') (citation omitted)); *Stern v. Islamic Republic of Iran*, 73 F. Supp. 3d 46, 49-50 (D.D.C. 2014) (granting motion to quash writs of attachment))).

As this Court recognized in its earlier opinion:

> [I]t is black-letter law that this Court has "inherent power to reconsider an interlocutory order as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (cleaned up); see Fed. R. Civ. P. 54(b). District courts thus "retain broad discretion" to reconsider earlier interlocutory orders and may grant such reconsideration on a number of grounds, including the existence of new arguments or

---

[2] It is not clear that there is a "meet and confer" requirement under the local rules for this Motion to Quash and Transfer. However, counsel for the Levins met and conferred with counsel for the Owens Plaintiffs, who confirmed that they will oppose the relief sought by this Motion.

> information that "might reasonably be expected to alter the
> conclusion reached by the court." *Cobell v. Norton*, 355 F. Supp. 2d
> 531, 539–40 (D.D.C. 2005).

*Levin*, 523 F. Supp. 3d at 19; *see also Ofisi v. BNP Paribas, S.A.*, 285 F. Supp. 3d 240, 243

(D.D.C. 2018) (Bates, J.) (granting motion for reconsideration) ("A court may revise its own

interlocutory orders 'at any time before the entry of a judgment adjudicating all the claims and

all the parties' rights and liabilities.'").

The Levins are judgment creditors of the Islamic Republic of Iran ("Iran"). "The *Levin*

plaintiffs obtained nearly $30 million in judgments against Iran for the 1984 kidnapping and

torture of Jeremy Levin by Iran-backed Hezbollah." *Levin v. Islamic Republic of Iran*, No. 05-cv-

2494, 2008 WL 11493474 (D.D.C. Jan. 14, 2008); *see also Estate of Levin v. Wells Fargo Bank,

N.A.*, 45 F.4th 416, 419, n.4 (D.C. Cir. 2022) ("*Levin I*") ("The *Levin* plaintiffs also filed writs of

attachment in South Dakota [where the assets are located] … Those proceedings have been

stayed pending the outcome of this case.").

**B.     The Levins and the Owens Obtained Writs of Execution on the Taif/Nautic
Blocked Assets**

Under the Terrorist Risk Insurance Act ("TRIA"), judgment creditors have an interest in

the Taif/Nautic Blocked Assets which have been the subject of many motions and two trips to the

United States Court of Appeals for the District of Columbia Circuit ("D.C. Cir."). *See Est. of

Levin v. Wells Fargo Bank, N.A.*, No. 23-7080, 2025 U.S. App. LEXIS 24920 at *9 (D.C. Cir.

Sept. 26, 2025) ("*Levin II*"). The Blocked Assets are held in South Dakota by the Wells Fargo

Bank, N.A. ("Wells Fargo"). *See Levin I*, 45 F.4th at 418 ("Wells Fargo placed the funds in an

account in South Dakota, as the bank apparently does with all blocked assets."); *Levin II*, 2025

U.S. App. LEXIS 24920 at *6 ("Alerted by [Office of Foreign Asset Control ('OFAC')] … Wells

Fargo halted the transfer of the Funds and placed the Funds in a South Dakota account."). Taif

Mining Company ("Taif") is an agency and instrumentality of Iran. *See Levin II*, 2025 U.S. App.

LEXIS 24920 at *7 ("Both groups [Levins and Owens] seek to attach the same $9.98 million

[('Taif Blocked Assets' or 'Nautic Blocked Assets')] —which we call the 'Funds'— to help

execute their judgments. That money surfaced after Taif Mining Services tried to wire it to

another foreign entity through Wells Fargo in New York. *Taif was prohibited from doing so*

*because it is a front company for the Iranian Revolutionary Guard Corps—an instrumentality of*

*Iran and OFAC-designated sponsor of terrorism.*" (citing 31 C.F.R. § 594.201(a)(5); *Levin I*, 45

F.4th at 417 (emphasis added))). "An instrumentality of the Islamic Republic of Iran [Taif] wired

nearly $10 million through an American bank. The United States blocked the funds pursuant to

the International Emergency Economic Powers Act…." *Levin II*, 2025 U.S. App. LEXIS 24920

at *1; *see also Levin I*, 45 F.4th at 417-18 ("Taif Mining itself is now on OFAC's list."); *id.* at

423 ("[T]he only entity that is out of pocket as a result of OFAC's blocking is the Iranian front

Taif, and that is because it is subject to U.S. sanctions. In terms of the TRIA, just quoted, the

$9.98 million therefore represents 'blocked assets of [a] terrorist party.'").

    The Taif Blocked Assets are property of Iran and Taif under both tracing principles to the

originator of the illegal electronic transfer ('EFT') of the funds, which then were blocked by the

Office of Foreign Asset Control, and under agency principles. *See Levin II*, 2025 U.S. App.

LEXIS 24920 at *8 ("The government moved to quash the Owens and Levin plaintiffs' writs,

and the district court granted the motion. Initially, it concluded that Iran lacked any property

interest in the funds held by Wells Fargo. Reversing, we held that terrorist victims may attach

blocked assets traceable to a terrorist owner and that the funds *were 'traceable to Taif and thus to*

4

*Iran.*'" (Emphasis added, internal citations omitted)); *Levin I*, 45 F.4th at 423-24, 426; [Dkt. 43 at 2-3].

Before the Levins obtained their writ in the District of Columbia ("D.C."), another group of creditors with judgments against Iran (the Owens Plaintiffs) obtained a writ of execution on the Taif Blocked assets in D.C. *Id.* Only the Levins have a valid writ in South Dakota, where the assets are located. *Levin I*, 45 F.4th 416, 419, FN 4. Now that the D.C. Circuit has twice held that the Nautic Blocked Assets are "blocked" under TRIA, are property traceable to Iran and Taif, and are subject to execution in order to satisfy the Levins' partially unsatisfied judgment against Iran and its agencies and instrumentalities,[3] the Levins ask this Court to quash the Owens Writs obtained in the D.C. because they do not provide the Owens Plaintiffs with a priority over the Levins' writ obtained in the jurisdiction where the blocked assets are located, namely South Dakota, and to transfer the case to the United States District Court for the District of South Dakota ("South Dakota Court") under 28 U.S.C. § 1404(a), where the Levins have a pending garnishment action against Wells Fargo, in which the United States intervened (currently stayed as to seeking collection on the Taif/Nautic assets). *See infra* at Section II; *see also Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46, 49 (S.D.N.Y. 2018); *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211-12 (2d Cir. 2014) (per curiam); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1342 (M.D. Fla. 2015); 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought….").

---

[3] *Id.*

II.    IN TRIA COLLECTION CASES, UNDER RULE 69, THE LAW OF THE STATE WHERE THE BLOCKED ASSETS ARE HELD GOVERNS

A.    In Cases Involving Multiple Claims to the Same Asset Federal Law Applies the Law of the State Where the Res Is Located

Federal Courts have confronted and resolved cases involving multiple claims to the same blocked assets under TRIA. The D.C. Circuit held in this case that the Government does not have a priority right to assets blocked by OFAC regulations issued under the authority of the International Emergency Economic Powers Act ("IEEPA") in a civil forfeiture action compared to judgment creditors with writs of execution under TRIA. *See Levin II*, 2025 U.S. App. LEXIS 24920 at *23, n. 1 ("[T]he government does not argue that section 981(c) bars attachments specifically authorized by TRIA. For good reason, because TRIA's attachment provision applies '[n]otwithstanding any other provision of law.' TRIA § 201(a). We have said that this phrase 'clearly requires courts to disregard other statutory provisions that conflict with the scope of the TRIA.' *Greenbaum v. Islamic Republic of Iran, 67 F.4th 428, 432 (D.C. Cir. 2023). So, if TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails*." (Emphasis added)).

TRIA's "notwithstanding" language trumps any steps the Government takes to obtain such blocked assets when victims of Iranian terrorism with judgments against Iran seek to execute on such assets. *See id.* at *5 (reversing the District Court's Order quashing writs of execution, among other reasons, because a civil forfeiture action was first filed by the Government) ("The whole point of section 201 was to eliminate the President's discretion to prevent victims of state-sponsored terrorism from attaching blocked assets. … If the government were right, then section 201 would not prevent the very mischief that Congress sought to

address—that provision would allow the Executive to thwart attachment of blocked assets simply

by authorizing itself to initiate forfeiture proceedings.").

     A component of a civil forfeiture act is that there are in fact assets subject to collection by

the Government. *See, e.g. United States v. Seventeen Thousand Nine Hundred Dollars*

*($17,900.00) in United States Currency*, 859 F.3d 1085, 1088 (D.C. Cir. 2017) ("The typical

forfeiture action begins when the government files a verified complaint against the property

specifying, among other things, 'the statute under which the forfeiture action is brought' and

'sufficiently detailed facts to support a reasonable belief that the government will be able to meet

its burden of proof at trial.' … As plaintiff, the government bears the ultimate 'burden of proof ...

to establish, by a preponderance of the evidence, that *the property is subject to forfeiture*.' 18

U.S.C. § 983(c)(1)." (Italics added)). In the case of OFAC blocked assets, if Judgment Creditors

of Iran seek to execute on those assets while they remain in a blocked bank account and obtain

writs of execution, those blocked assets are not available for the Government to execute on.  *See*

*Levin II*, 2025 U.S. App. LEXIS 24920 at *23, n. 1.

     The D.C. Circuit has decided that the Government's civil forfeiture case cannot prevail

against particular blocked assets when judgment creditors of Iran, like the Levins, obtain a writ

of execution in the jurisdiction where the blocked assets are located and act to collect those

assets under TRIA. *Id*. In other words, as between the Government and the Levins, the Levins

have a priority right to the Taif/Nautic blocked assets. *Id; also see* Levin Plaintiffs' Opposition to

Crystal Holdings Limited's Motion to Quash Plaintiffs' Writ of Attachment, Case No. 21-CV-

00420 [Dkt. 45] (Nov. 7, 2025) at 6-10. Since TRIA does not itself address priorities among

judgment creditors, under federal law, the law of the state where the blocked assets are located

controls the priorities. Federal Rule of Civil Procedure 69(a)(1) provides that the procedure for

execution of a judgment must accord with the practice and procedure of the state where a proper collection action is brought. Fed. R. Civ. P. 69(a)(1).

The law of the jurisdiction where the assets are located governs how proper writs of execution are issued and the priority rights which follow from such writs. As the Florida federal court held in a case involving TRIA:

> Such [blocked] assets will continue to be available to judgment creditors, provided that enforcement proceedings are commenced in the correct jurisdiction. Plaintiffs may seek to attach the blocked accounts, without any jurisdictional objection, *by registering their judgment in the district where the property is located pursuant to 28 U.S.C. § 1963* and thereafter by commencing garnishment proceedings, as other similarly situated judgment creditors have done. See *Hausler v. Republic of Cuba*, Case No. 09–22108–CIV–AJ, Agreed Order (S.D.Fla. Oct. 14, 2009) (Dkt. 25) (transferring judgment enforcement proceeding to Southern District of New York by agreement) *see also*, *Doe v. Ejercito de Liberacion Nacional*, 92 F.Supp.3d 1 (D.P.R.2015) (proceeding in garnishment in Puerto Rico against funds held in a Puerto Rico bank based on judgment entered in part against the FARC by the United States District Court for the Southern District of Florida, but registered in the United States District Court for the District of Puerto Rico).

*Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1342 (M.D. Fla. 2015) (emphasis added); *see also Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46, 49 (S.D.N.Y. 2018) ("To assess a party's property interest in a blocked EFT under the TRIA, courts must look to the governing law of the jurisdiction where the bank holding the EFT is located." (citing *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211-12 (2d Cir. 2014) (per curiam).); *Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143, 147 (2d Cir. 2018) (applying New York law to funds blocked and held by New York bank); *see also In re Hollingshead*, 286 B.R. 622, 624 (B.A.P. 6th Cir. 2002) ("[M]atters concerning the validity, nature, and priority of liens are governed by the law of the state in which the property is situated[.]").

This includes state-law rules regarding how liens are created and the "first in time, first in right" principles of priority among competing creditors. *Id.*; *see, e.g., Levin v. Bank of New York*, No. 09 CV 5900 RPP, 2011 WL 812032, at \*12 (S.D.N.Y. Mar. 4, 2011) ("[T]his Court is thus bound to apply the attachment procedures of the state where it [the blocked asset] is located; New York … Bank of New York has demonstrated that the Blocked Assets the Heisers seek are maintained in accounts located in New York, managed by employees who are based in New York. (Hall Dec. ¶ 3, Ex. A.) Therefore, the Heisers cannot demonstrate their entitlement to a turnover order issuing from this court on the basis of their Maryland writ of attachment [on assets held in New York], and their motion for such order is denied."); *see also United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*, 480 F. Supp. 3d 39, 44 (D.D.C. 2020) (referring to the law of the state in which the interest arose); *South Shore Bank v. Int'l Jet Interiors*, 721 F. Supp. 29, 34 (E.D.N.Y. 1989) ("Where, as here, however, there is more than one recorded lien the priority of those liens is determined by reference to applicable state law."); *Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CV, 2020 WL 5545691, at \*5 (S.D. Fla. Mar. 23, 2020), *report and recommendation adopted sub nom. Stansell v. Revolutionary Armed Forces of Columbia*, No. 19-20896-CIV, 2020 WL 5547783 (S.D. Fla. Apr. 30, 2020) ("But most compellingly, the SDNY is where Citi's Blocked Account is located and where Citi has sought to protect the interests of its account holders. That fact is far more persuasive than where Plaintiffs have first filed their turnover motion.").

Additionally, under federal law, a proper writ of execution must be obtained by court order under 1610(c) from the jurisdiction where the blocked assets are located. *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) ("[T]he party must register their judgment and [obtain a] § 1610(c) order with the clerk of the court in the district in which the

assets to be seized are located and deliver the Clerk's Writ of Execution to the U.S. Marshal.");

*Levin v. Bank of New York*, No. 09 CV 5900 RPP, 2011 WL 812032, at \*12 (S.D.N.Y. Mar. 4,

2011) ("[S]ervice of a writ of attachment on the Bank of New York's Maryland branch is not

sufficient to attach assets residing in accounts in New York State.").

B.    **South Dakota Law Governs the Priority Right to the Taif/Nautic Blocked Assets Consistent with Federal Law**

No one disputes that the Taif/Nautic Blocked Assets are held in the South Dakota Branch

of Wells Fargo Bank, N.A. ("Wells Fargo"). Collection actions under TRIA use Federal Rule of

Civil Procedure 69 as the procedural authority to move in garnishment under the law of the state

where the blocked assets are being held. *See* FED. R. CIV. P. 69(a)(1) (the "procedure on

execution [of a money judgment] . . . must accord with the procedure of the state where the court

is located, but a federal statute governs to the extent it applies"); *see also Bank Markazi*, 578

U.S. at 221, n. 8; *El-Tabech v. Clarke*, 616 F.3d 834, 839 (8th Cir. 2010) (In "dealing with the

enforcement of a federal court judgment … Congress expressly declared its intent *not* to preempt

state law in approving Rule 69(a)(1)[.]"). South Dakota Codified Laws ("SDCL") § 21-18-1

permits judgment creditors, such as Plaintiffs (also "Garnishors"), to proceed by garnishment

against any person or entity holding the property of their judgment debtors. *See* SDCL § 21-18-1.

> In any action … to recover damages … pursuant to judgment or
> decree, any creditor is entitled to proceed by garnishment in any
> court having jurisdiction of the subject of the action, against any
> person, as defined in § 15-7-1, … including any corporation
> organized or authorized to be organized by or under the laws of
> any state or of the United States, which has the power to sue or be
> sued who shall be indebted to or have any property, real or
> personal, in its possession or under its control belonging to such
> creditor's debtor, in the cases, upon the conditions, and in the
> manner prescribed in this chapter.

SDCL § 21-18-1; *see also Sigler v. St. Paul Fire & Marine Ins. Co.*, 298 N.W.2d 792, 793 (S.D.

1980).

   Consistent with the D.C. Cir. Opinion in this case, South Dakota law enables a judgment

creditor to reach the personal property of a debtor held by a third party by requesting the court to

issue a writ of execution, as "[s]uch service of notice [under execution] upon the third party

under an execution is an effectual attachment or garnishment of the property or debt in the hands

of such third party...." *Frederick v. Nuzum*, 160 N.W. 65, 68 (S.D. 1916); SDCL § 21-18-1.  The

Supreme Court of South Dakota has stated that a "requisite[] of a garnishment action [is] a main

action founded upon … a judgment, or an execution against property." *Levin I*, 45 F.4th at 423;

*Sollid v. Pennington County Housing Authority*, 309 N.W.2d 814, 815 (S.D. 1981) (citing SDCL

§ 21-18-1).

> [U]nder § 201, which deals only with assets that have already been
> blocked by the United States, terrorist victims may attach OFAC blocked
> electronic funds transfers if those funds can be traced to a terrorist owner
> [such as the originator].
>
> Tracing is used throughout federal law to attach consequences to
> those having or having had interests in property. The Supreme
> Court has commented: "Courts use tracing rules in cases involving
> fraud, pension rights, bankruptcy, trusts, etc." *Luis v. United States*,
> 578 U.S. 5, 22, 136 S.Ct. 1083, 194 L.Ed.2d 256 (2016) (plurality
> opinion) (per curiam). The federal forfeiture statutes expressly
> incorporate tracing. *See, e.g.*, 18 U.S.C. §§ 981, 982; 21 U.S.C. §
> 881(a)(6); *United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir. 1993).
> … *See Heiser*, 735 F.3d at 938–39; *Doe*, 899 F.3d at 160–61 (Chin,
> J., dissenting).

*Levin I*, 45 F.4th at 423; *see also Temple v. Temple*, 365 N.W.2d 561, 567 (S.D. 1985) ("'Tracing'

is an equitable principle which allows a party with the right to property to trace that property

through any number of transactions in order to reach the final proceeds or result."); *Fokken v.

State Bank & Tr. Co.*, 217 N.W. 512, 514 (S.D. 1928) ("It seems to us that, if ever money

wrongfully misappropriated by a bank can be 'traced into the confer of the bank,' it has been

done in the case before us."); *Charlson v. Charlson*, 892 N.W.2d 903, 907 (S.D. 2017) (Supreme

Court of South Dakota cited to *Temple*, 365 N.W.2d at 567 when stating: "South Dakota law

allows for the use of tracing."); *Meyer v. Norwest Bank Iowa, Nat. Ass'n*, 112 F.3d 946, 950 (8th

Cir. 1997) ("Under South Dakota law, … [t]racing is allowed 'so long as such property, its

product or its proceeds is capable of identification.['] *McFarland v. McFarland,* 470 N.W.2d

849, 852 (S.D.1991)."); *Levin I*, 45 F.4th at 423.

###### C.    Application of Law

Here, the location of the Taif/ Nautic Blocked assets is South Dakota. *Levin I*, 45 F.4th

416 ("Wells Fargo placed the funds in an account in South Dakota, as the bank apparently does

with all blocked assets."); *id.* at 419, n.4 ("The *Levin* plaintiffs also filed writs of attachment in

South Dakota [where the assets are located] … Those proceedings have been stayed pending the

outcome of this case.").

The Owens Plaintiffs did not register their judgments in South Dakota and do not have

FSIA 1610(c) writs from the jurisdiction where the assets are blocked, namely, South Dakota,

and do not claim to have such a writ. The Levins, on the other hand, are the only judgment

creditors of Iran with a judgment registered in South Dakota and with a 1610 (c) writ of

execution ordered by the federal court in South Dakota. *See Levin v. Islamic Republic of Iran*,

Case No. 20-mc-35 (D.S.D.) [Dkts. 1, 6, 14]. Therefore, under federal law, they have complied

both with FSIA §1610(c) requirements for a court ordered writ of execution as to the blocked

assets in the jurisdiction where they are located, and by virtue of holding the first in time

registered judgment and writ of execution in the jurisdiction where the assets are being held,

namely South Dakota, they have the priority right to collect. *See supra* at Section II.A.

The Levins are mindful that this Court has jurisdiction over this matter as the Government filed the civil forfeiture action in this Court first. This Court is not required to transfer the matter to South Dakota and could apply South Dakota law to resolve the issue of priority among the Levins and the Owens Writs. However, the South Dakota Court clearly has jurisdiction over the Taif/Nautic Blocked Assets and Wells Fargo, and the Government has intervened there. *See generally*, *Est. of Levin v. Wells Fargo Bank, N.A.,* Case No. 4:21-cv-4024-KES (D.S.D.). Neither the Owens Plaintiffs (nor the Government for that matter) have a valid lien, writ of execution, or complaint against the *res* here: the Taif/Nautic Blocked Assets held in South Dakota. *See supra* at Sections II.A-B. Under TRIA and Rule 69, the law of South Dakota applies to determine the priority between the judgment creditors, the Levins and the Owens Plaintiffs. *Id*.

Since the Court's jurisdiction here was premised on the civil forfeiture case, which cannot proceed against the Taif/Nautic Blocked Assets to which the Levins as judgment creditors of Iran have a valid writ of execution, and given that South Dakota law applies to determine the priority rights, the Court should enter an order quashing the Owens' writs of execution issued in the District of Columbia. *E.g., Stansell*, 149 F. Supp. 3d at 1342. The Owens Writs, obtained in D.C., are not sufficient to establish their priority over the Blocked Assets under South Dakota law, where the Blocked Assets are held. *See Supra* at Section II.A.

After the Court enters such an order and if it transfers the case to South Dakota, the Levins will dismiss their action in this Court, will file a motion to lift the stay on their action against Wells Fargo (where the Government is also an intervenor), and will file a motion for summary judgment as to the only valid writ of execution on the Taif/Nautic Blocked Assets.

Since federal law requires a valid writ to be obtained in South Dakota in order to execute

on property in South Dakota, the Owens Writs in D.C. can have no effect and the writ should be

quashed. *See, e.g., Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013);

*Levin v. Bank of New York*, No. 09 CV 5900 RPP, 2011 WL 812032 at *12 (S.D.N.Y. Mar. 4,

2011). If the Court so Orders, the Levins can either file a turnover summary judgment in this

Court or if the matter is transferred, under 28 U.S.C. § 1404(a), to South Dakota for further

proceedings consistent with the D.C. Circuit Court's holdings and the law of South Dakota as to

priority of collection, the Levins will proceed there. 28 U.S.C. § 1404(a); *supra* at Section I.A.

In any event, the Owens Writs do not provide them with a basis to collect on the Taif

Blocked Assets as they did not secure such a writ in the jurisdiction where the Blocked Assets

are held, as is required. *See supra* at Sections II.A-B. Therefore, the Owens Writs should be

quashed and the *Estate of Jeremy Levin, et al. v. Wells Fargo Bank, N.A.*, Case No. 21-0420,

should be transferred to the South Dakota Court under § 1404(a). *Id.*

## III.    CONCLUSION

For all the reasons set forth above, the Levins' Motion should be granted the Owens Writs

should be quashed and all cases consolidated under *Estate of Jeremy Levin, et al. v. Wells Fargo*

*Bank, N.A.*, Case No. 21-0420, including Case Numbers 21-0126, 21-0127, and 21-0128, should

be transferred to the South Dakota Court.

Dated: November 11, 2025                    Respectfully submitted,

                                            HOWARTH & SMITH

                                            */s/ Suzelle M. Smith*
                                            Suzelle M. Smith, D.C. Bar No. 376384
                                            30745 Pacific Coast Hwy, Suite 2046
                                            Malibu, California 90265
                                            (213) 955-9400
                                            ssmith@howarth-smith.com

Attorneys for Plaintiffs and Garnishors