**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ESTATE OF JEREMY ISADORE LEVIN,** *et al.*, **Plaintiffs,** **v.** **WELLS FARGO BANK, N.A.,** **Defendant.** **(And consolidated cases)** | Civil Action No. 21-420 (JEB) |

<u>**MEMORANDUM OPINION**</u>

After intercepting almost $10 million headed to a company that was a front for members of the Iranian Revolutionary Guard Corps, the United States filed a civil-forfeiture action against the funds in this Court and sought custody of them.  News coverage of the venture prompted other parties, including victims of terrorist attacks who hold judgments against Iran, to seek to attach the funds.  After protracted litigation over those writs of attachment, including two trips to the D.C. Circuit, the Court faces a complex set of motions seeking to winnow and prioritize the claimants to the funds and to transfer this action to the District of South Dakota, where the funds are currently housed.  The Court will decline to quash the Victim-Plaintiffs' writs and will retain its exclusive jurisdiction over these proceedings.  It will, however, grant the Government's Motion to Deposit Funds in this Court's registry for ease of maintenance and disposition for the remainder of the litigation.

## I.    Background

The events giving rise to this case, and its subsequent five-year history, involve multiple players and myriad legal maneuvers by the various parties.  The Court, mindful of the four prior Opinions that detail that factual and procedural history, focuses on the facts relevant to the pending Motions before it.

### A.    Interception of Funds

In 2019, Crystal Holdings Limited and Taif Mining Services, LLC, entered a contract for the sale and purchase of an oil tanker for more than $12 million.  Est. of Levin v. Wells Fargo Bank, N.A., 45 F.4th 416, 417–18 (D.C. Cir. 2022).  Crystal Holdings — the seller — is a Liberian subsidiary of a Greek company.  Id. at 417.  The buyer, Taif, is incorporated in Oman. Id.  After successfully transferring a $2.34 million deposit to Crystal Holdings' Credit Suisse account, Taif sought to transfer the $9.98 million balance needed to complete the sale.  Id. at 418.  It first wired that sum to the Holman Fenwick law firm (HFW), which then deposited the $9.98 million in an account at a London bank.  Id.  HFW initiated the transfer between the London bank account and Crystal Holdings' account, which required a bridge transfer through an intermediary — Wells Fargo bank in New York.  Id.; see also Heiser v. Islamic Republic of Iran, 735 F.3d 934, 936 (D.C. Cir. 2013) (describing intermediary fund-transfer process).  At that step, however, the companies encountered rough seas.

Unbeknownst to Crystal Holdings, Taif is not solely an Omani company engaged in nautical commerce; it is wholly owned by two members of the Iranian Revolutionary Guard Corps.  Est. of Levin, 45 F.4th at 417.  IRGC members are among the persons barred from owning or transacting assets within the United States, by virtue of their inclusion on the Specially Designated Nationals and Blocked Persons List that the United States Department of

2

the Treasury's Office of Foreign Assets Control maintains. See 31 C.F.R. § 594.201(a)(5). When the $9.98 million transfer hit Wells Fargo's account, OFAC immediately blocked its further movement pursuant to 50 U.S.C. § 1702. Est. of Levin, 45 F.4th at 418. The money destined for purchase of the boat was thus frozen in the United States, and it was not transferred to Crystal Holdings' account. Id. Wells Fargo then moved those funds from its account in New York to an account in South Dakota, its headquarters location. Id.; Fed. Deposit Ins. Comm'n, Wells Fargo Bank, National Association (Mar. 6, 2026), https://perma.cc/7F5F-YK8L. Unaware of the fund-transfer hiccup, Crystal Holdings delivered the tanker to Taif. United States v. $2,340,000.00 Associated with Petroleum Tanker Nautic, No. 20-1139 (D.D.C. May 1, 2020), ECF No. 1 (Civil Forfeit. Compl.), ¶¶ 39, 42.

On May 1, 2020, the United States filed a forfeiture action for the Blocked Funds in this Court. Id. at 1. This Court issued an arrest warrant for the Blocked Funds *in rem* on the same day. See $2,340,000.00 Associated with Petroleum Tanker Nautic, No. 20-1139, ECF No. 3 (Arrest Warrant). The Government then obtained an OFAC license permitting it and Wells Fargo to "engage in all transactions necessary . . . [to] allow any duly authorized federal law enforcement officer to take possession and custody of the Funds," so long as the Government received a "valid forfeiture order" from this Court. Owens v. Wells Fargo Bank, N.A., No. 21-126 (D.D.C. Aug. 17, 2020), ECF No. 4-2, Exh. J (OFAC License) at 2. As new claimants to the Blocked Funds emerged, however, it asked the Court to stay the underlying forfeiture action until the validity of those claims was resolved. Levin v. Islamic Republic of Iran, 523 F. Supp. 3d 14, 18 (D.D.C. 2021). This the Court has done. See ECF No. 51 (Joint Schedule Ord.) at 2.

B.    Victim-Plaintiffs

The Government, it turns out, has not cornered the market in confiscated Iranian assets. Over the years, certain victims of Iranian-sponsored terrorist attacks have brought claims under the Foreign Sovereign Immunities Act and obtained final judgments against Iran. See, e.g., Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 24 (D.D.C. 2009) (awarding over $10 million in damages); Rezaian v. Islamic Republic of Iran, 422 F. Supp. 3d 164, 184 (D.D.C. 2019) (awarding approximately $180 million judgment against Iran). Congress, in turn, has authorized holders of such judgments to attach "the blocked assets of [the] terrorist party . . . in order to satisfy" those judgments. See Terrorism Risk Insurance Act of 2002 § 201(a), codified at 28 U.S.C. § 1610 note. Relevant here, two sets of Plaintiffs seek to recover part of their judgments from the Blocked Funds.

The Owens Plaintiffs are a group of individuals (and their family members) who were injured and killed by al Qaeda's bombings of U.S. embassies in 1998. Levin, 523 F. Supp. 3d at 15. Because Judge John Bates of this district found Iran had provided material support to al Qaeda before those attacks, the Owens Plaintiffs obtained various judgments against Iran totaling nearly $1 billion in 2014. Id.; Owens v. Republic of Sudan, No. 01-2244 (D.D.C. Mar. 28, 2014), ECF No. 301 (Judgment); Mwila v. Islamic Republic of Iran, No. 08-1377 (D.D.C. Mar. 28, 2014), ECF No. 88 (Judgment); Khaliq v. Republic of Sudan, No. 10-356 (D.D.C. Mar. 28, 2014), ECF No. 40 (Judgment). Those judgments have not been satisfied. See No. 01-2244, ECF No. 450-2 (Writ Memo).

The Levin Plaintiffs are a smaller group comprising the estate and family members of Jeremy Levin, who was kidnapped and tortured by Hezbollah, another Iran-supported terrorist

4

group, in 1984.  Levin, 523 F. Supp. 3d at 15.  The Levin Plaintiffs have also obtained a judgment for their claims, of which over $15 million remains outstanding.  Id.

Several weeks after the Government filed its forfeiture action against the Blocked Funds, the Owens Plaintiffs learned of the action through public news reporting and moved for writs of attachment under the Terrorism Risk Insurance Act against the Funds in this district in May 2020.  Id. at 18; Owens, No. 01-2244, ECF No. 450 (Owens Mot. for Writ).  The Levin Plaintiffs took a different approach.  First, they filed an application for a writ of execution against the Blocked Funds in the Southern District of New York on August 11, 2020.  Levin v. Bank of N.Y., No. 09-5900 (S.D.N.Y. Aug. 11, 2020), ECF No. 1309 (Levin App. Writ SDNY).  That court granted the writ, but "its effect is essentially stayed" because of a joint stipulation between those Plaintiffs and the Government.  Levin, 523 F. Supp. 3d at 19.  Separately, on August 19, 2020, the Levin Plaintiffs sought a writ of attachment in this district.  Levin v. Islamic Republic of Iran, No. 05-2494 (D.D.C. Aug. 19, 2020), ECF No. 34 (Levin Mot. Writ DDC).  Finally, they sought and obtained a writ of execution in the District of South Dakota.  Levin v. Islamic Republic of Iran, No. 20-mc-35, ECF No. 12 (D.S.D. Dec. 31, 2020).

The Government intervened in both the Owens Plaintiffs' and the Levin Plaintiffs' actions in this district and moved for reassignment to this Court to "consolidate all funds-related litigation before one judge."  Levin, 523 F. Supp. 3d at 18.  The presiding judge in each case granted the Government's respective motions and transferred the writ proceedings to this Court. Id.

C.    Prior Litigation

Once before this Court, the Government moved to quash both sets of Plaintiffs' writs of attachment, raising identical arguments in each.  Id.  This Court granted the Government's

motions, noting that Article 4A of the Uniform Commercial Code sets forth the general rule that "the only entity with a property interest in an EFT [electronic funds transfer] while it is midstream is the entity immediately preceding the bank 'holding' the EFT in the transaction chain" — that is, Taif's bank, not Taif itself.  Id. at 21 (quoting Calderon-Cardona v. Bank of N.Y. Mellon, 770 F.3d 993, 1002 (2d Cir. 2014)).  It thus reasoned that the Blocked Funds were neither "blocked assets" of Iran under the TRIA, nor "the property" of Iran under the FSIA, so the Owens and Levin Plaintiffs had no basis for attaching the Funds under either Act.  Id. at 20, 24.

The D.C. Circuit reversed.  It held that U.C.C. Article 4A is "inapplicable" to determine the ownership of funds blocked pursuant to OFAC regulations.  Est. of Levin, 45 F.4th at 423.  It further held that because the Blocked Funds "are traceable to Taif and thus to Iran," they are "the blocked assets of a terrorist party" under the TRIA.  Id. at 423–24 (quotation marks and alterations removed).  It then remanded to this Court for further proceedings.  Id. at 424.

On remand, the Government renewed its Motions to Quash the writs of both sets of Plaintiffs.  See ECF Nos. 24 (Second Mot. Quash Owens); 25 (Second Mot. Quash Levin). Again this Court granted the Government's motions, holding that Plaintiffs' claim to the Blocked Funds was deficient in numerous ways.  See generally Est. of Levin v. Wells Fargo Bank, N.A., 2023 WL 3750577 (D.D.C. June 1, 2023).  Relevant here, it held that: 1) the funds were not "blocked assets" within the TRIA because they were not "frozen" after the Government obtained an OFAC license that would permit transfer of the funds in certain circumstances; and 2) the prior-exclusive-jurisdiction doctrine barred Plaintiffs' separate writ actions from proceeding after the Government had filed its civil-forfeiture action.  Id. at *5, *8.

6

The D.C. Circuit once again reversed and remanded.  It first held that the Blocked Funds "meet all the elements of th[e] statutory definition" of a "blocked asset" under the TRIA.  Est. of Levin v. Wells Fargo Bank, N.A., 156 F.4th 632, 642 (D.C. Cir. 2025).  The Circuit also held that the prior-exclusive-jurisdiction doctrine bars simultaneous *in rem* proceedings in courts of different jurisdictions (*e.g.*, federal and state courts, or two federal courts in separate districts), but does not apply to proceedings in two courts within the same district.  Id. at 642–43.

D.    Current Motions

On remand once more, the same characters seeking possession of the Blocked Funds attempt various procedural gambits to vindicate their claims.  The Levin Plaintiffs seek to transfer the action to the District of South Dakota, where the account holding the Blocked Funds is located.  See ECF No. 47 (Levin Mot. Transfer).  The Government, for its part, does not move to quash Plaintiffs' writs a third time; instead, it moves to deposit the Blocked Funds in the Court's registry until their final disposition is adjudicated.  See ECF No. 57 (Mot. Deposit Funds).  The Levin Plaintiffs also move to quash the Owens Plaintiffs' writ of attachment.  See Levin Mot. Transfer.  The Owens Plaintiffs, in turn, cross-move to quash the Levin Plaintiffs' writ.  See ECF No. 55 (Owens Mot. Quash).  Crystal Holdings — the boat seller and intended recipient of the Blocked Funds' transfer — moves to quash both the Levin and Owens Plaintiffs' writs of attachment, asserting that "title to [the Blocked Funds] transferred to Crystal upon escrow closing."  ECF No. 43 (Crystal Mot. Quash) at 1.

The Court now attempts to untangle this Gordian knot.

II.    **Legal Standard**

Title 28 U.S.C. § 1404(a) permits district courts to "transfer any civil action to any other district . . . where it might have been brought" if such transfer would serve "the interest of

justice."  The movant "must first show that the plaintiff could originally have brought the case in the transferee district."  Ngonga v. Sessions, 318 F. Supp. 3d 270, 274 (D.D.C. 2018) (quoting Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013)).  When considering whether to transfer a case to a valid transferee forum, "courts should balance case-specific factors which include the private interests of the parties and public interests such as efficiency and fairness."  Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

As it has in its prior Opinions in this case, see Levin, 523 F. Supp. 3d at 19; Est. of Levin, 2023 WL 3750577, at *4, this Court again acknowledges that is has "inherent power to reconsider an interlocutory order as justice requires."  Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (formatting modified); see Fed. R. Civ. P. 54(b).  District courts "retain broad discretion" to reconsider earlier interlocutory orders and may grant such reconsideration on a number of grounds, including the existence of new arguments or information that "might reasonably be expected to alter the conclusion reached by the court."  Cobell v. Norton, 355 F. Supp. 2d 531, 539–40 (D.D.C. 2005) (formatting modified and quotation omitted).  Courts routinely evaluate the validity of writs of attachment *de novo* when faced with motions to quash.  See, e.g., Bennett v. Islamic Republic of Iran, 618 F.3d 19, 21 (D.C. Cir. 2010) (affirming district court's order granting motion to quash writs of attachment, holding that "[w]hether the properties are subject to attachment is a question of law that we review de novo") (citation omitted); Stern v. Islamic Republic of Iran, 73 F. Supp. 3d 46, 48–50 (D.D.C. 2014) (granting motion to quash writs of attachment).

### III.    Analysis

The Court begins with the Levin Plaintiffs' Motion to Transfer the case to South Dakota. Rejecting that plan, it next considers the Government's Motion to Deposit Funds and concludes with the Plaintiffs' competing Motions to Quash.

### A.    Motion to Transfer

In order to successfully obtain transfer, the Levin Plaintiffs must first satisfy the requirement that their case "might have been brought" in the District of South Dakota. See 28 U.S.C. § 1404(a). That requirement is assessed at the time of filing. Relf v. Gasch, 511 F.2d 804, 807 (D.C. Cir. 1975). They falter at this step.

These Plaintiffs do not dispute that this Court had jurisdiction over the Government's initial civil-forfeiture action against the Blocked Funds. See Levin Mot. Transfer at 13 ("The Levins are mindful that this Court has jurisdiction over this matter as the Government filed the civil forfeiture action in this Court first."). Nor could they: 28 U.S.C. § 1355(a) gives district courts jurisdiction over "any action . . . for the recovery or enforcement of any . . . forfeiture." And venue is undeniably proper because OFAC — the entity responsible for blocking funds from entities on the Blocked Persons list — is located in D.C. Id. § 1355(b)(1)(A) (venue is proper in districts where "acts or omissions giving rise to the forfeiture occurred").

This Court's initial exercise of jurisdiction over the civil-forfeiture action thus barred any other courts from exercising jurisdiction over the Blocked Funds under the prior-exclusive-jurisdiction rule. Applicable to *in rem* actions, that rule provides that "when a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court." 13F Wright & Miller's Federal Practice & Procedure § 3631 (3d ed. 2025); see Princess Lida of

9

Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939). The rule exists to "prevent jurisdictional conflicts" implicated when multiple courts seek to dispose of a *res* in different ways. Est. of Levin, 156 F.4th at 642. The rule is so strong that "the first court to assume jurisdiction over the *res* may even enjoin proceedings in the second" if such action would "safeguard the integrity of its orders." United States v. $79,123.49 in U.S. Cash & Currency, 830 F.2d 94, 97 n.3 (7th Cir. 1987).

The conclusion inescapably follows that neither the Levin Plaintiffs nor any other party could have brought an action asserting a claim to the Blocked Funds in the District of South Dakota, the proposed transferee district — or anywhere else for that matter. When no court within the transferee district would have had jurisdiction at the time of the Complaint's filing, the movant cannot satisfy § 1404(a). Cf. Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 33 (3d Cir. 1993) (transfer prohibited when transferee court lacked personal jurisdiction over party).

The Levin Plaintiffs disagree. They contend that "the first to file rule is not a rigid rule to be applied automatically." ECF No. 59 (Levin Reply to Gov.) at 22. The cases they cite, however, are not *in rem* proceedings. Id. (citing, e.g., Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620 (D.C. Cir. 1975) (action for injunctive relief and damages stemming from disputed construction loan); Coal River Mountain Watch v. U.S. Dep't of the Interior, 146 F. Supp. 3d 17, 23 (D.D.C. 2015) (concerning "parallel [APA] actions in federal court")).

The Levin Plaintiffs have confused the "first-to-file" principle, which guides the consolidation of parallel federal actions, with the prior-exclusive-jurisdiction rule, which prevents competing adjudications of the same *res*. The first theory offers a presumption when two district courts preside over simultaneous actions brought *in personam* concerning related

subject matter.  While permissible, such arrangement is often undesirable, and the Federal Rules of Civil Procedure and precedent promote consolidation of the actions or dismissal of the duplicative one where possible.  See, e.g., Fed. R. Civ. P. 13(a) (requiring counterclaims be brought in originally filed case); Wash. Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) ("Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously.").  In those circumstances, district courts favor the first-filed suit as a "general rule."  Columbia Plaza, 525 F.2d at 627.  "Although it is referred to as the 'first-filed rule,' it is instead an equitable doctrine."  Sandra L. Potter, The First-Filed 'Rule' and Moving to Dismiss Duplicative Federal Litigation, 33 Rev. Litig. 603, 614 (2014).  The rule is meant to avoid the efficiency and equity concerns inherent in permitting a later-filed action to go forward over its initially filed counterpart.  See Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1203 (2d Cir. 1970) (describing risk of forum manipulation and "heavy price" exacted should later-filed action prevail).  Specific circumstances can nonetheless shift the balance of equities and overcome the default preference for the first-filed case.  For example, where the location of witnesses, inclusion of relevant parties, and extent of prior litigation all favor the later-filed action, that action may prevail.  Columbia Plaza Corp., 525 F.2d at 628.  The first-filed rule in dueling *in personam* actions is thus a preference, not a jurisdictional mandate.

An *in rem* action is a wholly different animal.  When a district court exercises jurisdiction over a piece of property, it precludes other courts from exercising concurrent jurisdiction over that *res*.  Princess Lida, 305 U.S. at 466 (if "two suits are in rem, or quasi in rem, . . . the jurisdiction of the one court must yield to that of the other").  The prohibition is not simply a matter of comity between courts: it shields the *res* from conflicting dispositions and prevents

11

undermining the original court's orders.  Kline v. Burke Constr. Co., 260 U.S. 226, 232 (1922) (concurrent jurisdiction over same *res* would "lead to a conflict of authority where each court acts in accordance with law") (quotation marks omitted).  The D.C. Circuit previously held in this case that "[n]o such conflicts arise when multiple suits are filed in the same court."  Est. of Levin, 156 F.4th at 643 (reversing this Court's holding that prior-exclusive-jurisdiction doctrine barred Plaintiffs' writs in this district after Government filed civil-forfeiture action).  But the doctrine applies with full force to bar any other courts from exercising jurisdiction over the Blocked Funds once this Court assumed jurisdiction.

The Government's civil-forfeiture action and the Levin and Owens Plaintiffs' writs of attachment are "three competing *in rem* actions filed against the same property."  Est. of Levin, 156 F.4th at 642.  They must be resolved in one court — namely, the first court properly exercising jurisdiction over the Blocked Funds.  That court, as it has been for the five years since this group of actions first commenced, is this one.

The Levin Plaintiffs gesture at an argument that the Court should dismiss the underlying civil-forfeiture action because the Victim-Plaintiffs' claims to the Blocked Funds overwhelm the Funds' balance, leaving nothing for the Government to ultimately obtain.  See Levin Reply to Gov. at 24–25.  Such dismissal, they contend, would free this Court from the dictates of the prior-exclusive-jurisdiction doctrine and throw open the transfer portal to South Dakota.  Id. at 25.  Setting aside the Levin Plaintiffs' apparent reversal on Reply, see Levin Mot. Transfer at 13 (conceding Court "has jurisdiction over this matter as the Government filed the civil forfeiture action in this Court first"), this position fails on two fronts.  First, the transferee court's jurisdiction is assessed at the time a plaintiff files his Complaint in the transferor court.  See Hoffman v. Blaski, 363 U.S. 335, 342–43 (1960).  If the Court disclaimed jurisdiction over the

12

Blocked Funds now, it would not change the fact that it had exclusive jurisdiction at the relevant time — when the writ of attachment was filed.  The Levin Plaintiffs' argument, moreover, is essentially that their claim is senior in priority to the Government's.  The Court is not prepared to determine the priority of competing interests for the Blocked Funds at this juncture for reasons discussed in Section III.D, infra.

Even if the Levin Plaintiffs could have satisfied the first prong of § 1404(a), it would not be "in the interest of justice" to transfer the matter to South Dakota.  See 28 U.S.C. § 1404(a).  Both the balance of private interests and the public interest in equity and fairness militate against such transfer.

While these factors are not exhaustive, district courts consider private interests like the parties' forum preferences, the "convenience of the parties," and "whether the claim arose elsewhere" when weighing that side of the ledger.  Greater Yellowstone Coal., 180 F. Supp. 2d at 127.  None favors transfer.  Starting with the parties' preferences, only the Levin Plaintiffs prefer to relocate to South Dakota; the Owens Plaintiffs and the Government favor continuing litigation in this Court.  Compare Levin Mot. Transfer at 5, with Owens Mot. Quash at 1, and Mot. Deposit Funds at 3–4.  As for convenience, it is "at least neutral," Levin Reply to Gov. at 29, since the Blocked Funds are held in a South Dakota account, but the Government's litigating component and OFAC, the agency responsible for blocking the Funds in the first place, are here in D.C.  See Mot. Deposit Funds at 6.  Finally, however the "claim" is characterized — either the underlying suits against Iran giving rise to Plaintiffs' writs of attachment or the initial civil-forfeiture action against the Funds by the Government — none of the preceding events occurred in South Dakota.  See Levin, 523 F. Supp. 3d at 15, 17.

Nor must the Court consider the Levin Plaintiffs' request while ignoring their prior

actions in this litigation.  Upon learning of the Blocked Funds' existence, they filed actions in three separate districts: the Southern District of New York (where the Funds were interrupted during the attempted EFT transfer and seized), this Court (where the Government initiated its civil-forfeiture action), and (months later) the District of South Dakota.  Levin, 523 F. Supp. 3d at 18–19.  They then chose to litigate vigorously here, twice moving for a writ of attachment and appealing this Court's orders quashing those writs.  Only now, faced with the prospect of competing priority interests, do they move to transfer.  Such transfer could indeed affect their fortunes moving forward: as discussed below, the court in which the attachment proceedings occur could dictate which state's procedural law, and thus which priority order, governs.  This Court will not exercise its discretion to transfer this action when doing so would prejudice other parties.  Cf. J.M.A. v. Sessions, 319 F. Supp. 3d 290, 297 (D.D.C. 2018) (preferring to sever claims rather than "prejudice" parties by transferring one count "to a court that so clearly lacks jurisdiction to hear it").

As for the public interest, courts consider "the administrative difficulties flowing from court congestion," any "local interest in having localized controversies decided at home," and "a court's familiarity with the 'law that must govern the action.'"  Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 62 n.6, 64–65 (2013) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).  Of these, the Court finds only the last relevant here. Litigation over the disposition of the Blocked Funds has been pending in this Court for more than four years.  This Court and the D.C. Circuit are well familiar with the facts and law of this case.  And while "[f]ederal district courts have equal familiarity with . . . federal laws" in general, Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv., 75 F. Supp. 3d 353, 358 (D.D.C. 2014), there is no denying the proliferation of claims brought in this district under the

Foreign Sovereign Immunities Act against Iran leading to judgments like the ones the Levin Plaintiffs now seek to enforce. See, e.g., Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52 (D.D.C. 2010); Ben-Rafael v. Islamic Republic of Iran, 540 F. Supp. 2d 39 (D.D.C. 2008); Ewan v. Islamic Republic of Iran, 466 F. Supp. 3d 236 (D.D.C. 2020). Consistency in the instant case and across similarly situated ones is thus promoted by keeping the action here.

Whether at the first or second prong of the § 1404(a) analysis, the Levin Plaintiffs come up short. The Court will thus deny their Motion to Transfer and proceed to the remaining Motions.

### B.      Motion to Deposit Funds

In order to streamline matters going forward, the Government has moved under Federal Rule of Civil Procedure 67(a) to deposit the Blocked Funds into the Court's registry until their disposition is finalized. See Mot. Deposit Funds at 9–10. That Rule provides that in actions where "any part of the relief sought is . . . the disposition of a sum of money . . . , a party . . . may deposit with the court all or part of the money." It is "within a district court's sound discretion to accept a deposit" under this Rule. Alstom Caribe, Inc. v. George P. Reintjes Co., Inc., 484 F.3d 106, 114 (1st Cir. 2007). Such transfer is "a procedural device intended to provide a place for safekeeping for disputed funds pending resolution of a legal dispute," not a "means of altering the contractual relationships and legal duties of the parties." Tegtmeier v. PJ Iowa, L.C., 189 F. Supp. 3d 811, 825 (S.D. Iowa 2016) (internal quotation marks and citation omitted); see Baxter v. United Forest Prods. Co., 406 F.2d 1120, 1126 (8th Cir. 1969) ("Rule 67 was not intended for . . . a one-sided before-judgment consequence.").

The Government notes that Wells Fargo, a disinterested party without claim to the Funds, seeks relief from the cost of holding the funds and participating in the ongoing proceedings. See

15

Mot. Deposit Funds at 10; see also Fed. R. Civ. P. 67 advisory committee's note to 1983 amendment (rule addresses "situations in which a litigant may wish to be relieved of responsibility for a sum or thing"). Wells Fargo does not object to transferring the Funds from its account, but it requests that the Court release it from all liability in this action upon transfer and that the Court require "written confirmation from the U.S. Department of Justice or [OFAC] that Wells Fargo make the transfer consistent with OFAC regulations." ECF No. 61 (Wells Fargo Resp.) at 1–2.

Only the Levin Plaintiffs oppose this Motion. They argue that the OFAC license applicable to the Funds does not "allow the Government to do anything with [the Blocked Funds]" — including transferring them to this Court pending final disposition — "unless and until it obtains a valid, final forfeiture judgement [sic]". See Levin Reply to Gov. at 18–19. They read the D.C. Circuit's holding that the Blocked Funds are "blocked assets" for purposes of the TRIA to mean that the Funds are "fully immobilized" and "must remain" in the South Dakota account no matter what. Id. at 19 (quoting Est. of Levin, 156 F.4th at 639).

Their concern is misplaced. The Circuit held that the Funds are a "blocked asset" under the TRIA because they are assets "'frozen by the United States' under . . . IEEPA." Est. of Levin, 156 F.4th at 638 (quoting § 201(d)(2)(A)). It further held that the Funds are "frozen" because an OFAC blocking order "provides that they 'may not be transferred, paid, exported, withdrawn, or otherwise dealt in without prior authorization from OFAC.'" Id. (quoting ECF No. 32-7 (OFAC Blocking Ord.) at ECF p. 4). Because Wells Fargo has requested that any transfer to the Court's registry be conditioned on confirmation that such transfer does indeed fall within OFAC's regulations, see ECF No. 61-1 (Wells Fargo Proposed Ord.), the Funds would only be transferred pursuant to "prior authorization from OFAC." OFAC Blocking Ord. at ECF

16

p. 4. They would thus remain as frozen and blocked as they currently are.

Nor is the Court concerned that such transfer under Rule 67 would conflict with the D.C. Circuit's holding that OFAC's license permitting certain transfers was sufficiently narrow to avoid unfreezing the Funds. Est. of Levin, 156 F.4th at 639. As an initial matter, Section I(a) of that license authorizes the United States to "engage in all transactions necessary and ordinarily incident to effect the forfeiture" of the Blocked Funds. See OFAC License at 2. That authorization is not conditioned on the Government's "furnishing a valid forfeiture order." Id. (Section II restrictions apply only to Section I(b)). Rule 67 authorizes the Court to "relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." Alstom Caribe, 484 F.3d at 113. Such a transaction would be "incident" to adjudicating a disputed forfeiture action and fall within the OFAC license's parameters. See OFAC License at 2. But even if it did not, an administrative transfer of the Funds is not the sort of "dealing" that the D.C. Circuit contemplated might be sufficient to unfreeze an asset. Est. of Levin, 156 F.4th at 639. A Rule 67 transfer is a "procedural device," not a means to "effect a legal transfer of property between litigants." Prudential Ins. Co. of Am. v. BMC Indus., Inc., 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986). No title will change hands, nor will any ownership interests be implicated. The Funds will still "do nothing but sit in a bank account" — just one overseen by the Court rather than a disinterested financial institution in South Dakota. Est. of Levin, 156 F.4th at 639.

Transferring the Blocked Funds, furthermore, would free Wells Fargo from the expense of maintaining them and participating in litigation in which it has no interest. The Court will thus exercise its discretion to grant the Government's Motion to Deposit Funds in the Court's registry, subject to the conditions Wells Fargo suggests.

C.      Motions to Quash

The Court next turns to the different Plaintiffs' respective Motions to Quash.  In order to resolve these issues, it must first determine which law governs.

1.      *Applicable Law*

For a change, the law here is gratifyingly clear.  The Motions to Quash concern Victim-Plaintiffs' attempts to execute on money judgments they hold against Iran.  Federal Rule of Civil Procedure 69(a)(1) provides that "proceedings supplementary to and in aid of [a money] judgment or execution [thereof]" are governed by "the procedure of the state where the court is located" — here, D.C.

The Levin Plaintiffs' contrary arguments do not undermine this conclusion.  They contend that in cases brought under the TRIA, "the law of the jurisdiction where the assets are located governs how proper writs of execution are issued" — here, South Dakota.  See Levin Mot. Transfer at 8.  They cite various cases to support their proposition.  Id.

None of these cases contravenes Rule 69(a)(1) or announces a separate choice-of-law rule applicable to assets blocked under the TRIA.  Courts there applied the law of the state where the assets were located — in some instances, where the presiding court was located as well — to determine the nature of a party's ownership interest in the given property.  See, e.g., United States v. $9,781,900.00 of Funds in Name of Falcon Strategies Sols., --- F. Supp. 3d ---, 2025 WL 3470138, at *6 (D.D.C. Dec. 3, 2025) (applying state law of asset location because "state law defines the applicable property interest"); United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512, 480 F. Supp. 3d 39, 44 (D.D.C. 2020) (similar); Harrison v. Republic of Sudan, 309 F. Supp. 3d 46, 49 (S.D.N.Y. 2018) (applying New York law where assets and court located in state); Levin v. JPMorgan Chase Bank, N.A., 751 F. App'x 143, 146–47 (2d Cir.

2018) (similar); Hausler v. JP Morgan Chase Bank, N.A., 770 F.3d 207, 212 (2d Cir. 2014). That is a separate question, however, from which state's procedures must be followed to execute on a previously established property interest.  Rule 69(a)(1) consigns execution procedures to the state law of the presiding court's location; the Levin Plaintiffs' authorities are not to the contrary.

Nor does Stansell v. Revolutionary Armed Forces of Colombia (FARC), 149 F. Supp. 3d 1337 (M.D. Fla. 2015), which the Levin Plaintiffs cite at length, support their assertion that the property's location determines the law governing garnishment procedures.  See Levin Mot. Transfer at 8.  There, the district court located in Florida applied Florida law to determine that garnishment of funds in New York bank accounts was unavailable.  Stansell, 149 F. Supp. 3d at 1339–41.  It thus did the very thing that Rule 69(a)(1) contemplates: apply the law of the state where the court, not the property, is located.  See also Levin v. Bank of N.Y., 2011 WL 812032, at *12 (S.D.N.Y. Mar. 4, 2011) (applying law of court's location).  This Court, too, will apply D.C. law to questions concerning the execution of any writs.  See Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of N.Y., 346 F.3d 264, 269 (2d Cir. 2003); Stansell v. Revolutionary Armed Forces of Colom., 771 F.3d 713, 729–30 (11th Cir. 2014) (applying law of court's location as required by Rule 69(a)(1)).

### 2. *Merits*

As set forth above, each set of Plaintiffs seeks to quash the other's writ, and Crystal Holdings moves to quash both.  While the parties have moved to quash various claims to the Funds — that is, for an order extinguishing another's property interest, see, e.g., ECF No. 37 (Levin Resp. Ord. Show Cause) (acknowledging that when writ is quashed, underlying claims to Funds "may not proceed") — they have not moved for summary judgment or made an equivalent motion that would permit this Court to dispose of the Blocked Funds to satisfy judgments or

claims against them. See, e.g., Levin v. Bank of N.Y., 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) (resolving competing claims at summary-judgment stage). Nor have the Levin or Owens Plaintiffs moved for condemnation of the Blocked Funds, a necessary procedural step under D.C. law. See D.C. Code § 16-525; Joint Schedule Ord. at 2 (staying condemnation deadline until further order of Court).

The Joint Scheduling Motion the parties proposed before briefing the at-issue Motions confirms that they contemplate another round of dispositive motions. See ECF No. 50 (Joint Schedule) at 4 (noting that "once the Court resolves the pending motions to quash, the parties disagree who should ultimately receive the Blocked Funds"). The United States, notably, "believes it has priority to the Blocked Funds because its forfeiture interest in them predates" the Victim-Plaintiffs' liens. Id. Yet that position is absent from the current briefing because the Government only opposes the Levin Motion to Transfer the Funds and does not renew its Motions to Quash. Id. at 3; see also Mot. Deposit Funds at 3. In other words, the United States has conceded that the Victim-Plaintiffs have an interest in the Funds while maintaining its purportedly superior claim to them.

The Court will thus resolve the Motions to Quash to determine the full set of valid interests in the Blocked Funds but reserve ruling on the priority of those interests until complete briefing on a motion for summary judgment, a motion to turn over funds, or other such action.

                    a.              Levin Plaintiffs' Motion to Quash Owens Plaintiffs' Writ

Given the holdings in this Opinion situating venue and the Funds here, little remains of the Levin Plaintiffs' argument that the Owens Plaintiffs lack claim to the Funds. Their main contention is that this Court should quash the Owens Plaintiffs' writ of attachment because they

do not have a writ issued "from the jurisdiction where the assets are blocked" — that is, South Dakota.  See Levin Mot. Transfer at 12.

No such requirement stems from federal statute.  The Owens Plaintiffs obtained an order from Judge Bates in their underlying case against Iran permitting them to seek satisfaction of the judgment against that nation.  Owens v. Republic of Sudan, No. 01-2244 (D.D.C. Oct. 28, 2015), ECF No. 389 (Owens 1610 Ord.).  The FSIA requires such an order for a claimant to attach a foreign state's property that would otherwise be protected by sovereign immunity.  See id.; 28 U.S.C. § 1610(c).  Such an order permits Plaintiffs to "locate Iranian assets and convince a court with jurisdiction over those assets that they are subject to attachment."  Ewan v. Islamic Republic of Iran, 2026 WL 237562, at *2 (D.D.C. Jan. 29, 2026).  But nothing within that provision requires that the order come from a court within the district where the property is located.  Id.; see also Levin Mot. Transfer at 12 (asserting § 1610(c) location requirement but citing no authority for proposition).

The Levin Plaintiffs also argue that neither federal nor state law permits a court located in D.C. to order garnishment of funds currently located in South Dakota.  This argument ignores this Court's exclusive jurisdiction over the *res* of the Blocked Funds.  The Government's civil-forfeiture action gave this Court sole authority to issue orders disposing of claims to the Funds and permits it to order the Funds' transfer, as it does here.  See 28 U.S.C. § 1355(d).  Once the Blocked Funds are located in its registry, any concerns about a mismatch between the location of the writ and the blocked assets will be extinguished.  Even if this Court were not ordering the transfer of the funds to this district, garnishment would not be appropriate at this time.  No party has filed a motion for condemnation of the Funds, as required by D.C. law.  See D.C. Code § 16-525.  To the extent that the Levin Plaintiffs still contend that the assets' location and the timing

21

of the writs' issuance dictates the priority of parties' claims to the Funds, they can renew those arguments on a motion for condemnation, summary judgment, or other action for final disposition. But no basis exists to quash the Owens Plaintiffs' valid writ of attachment in the Court exercising sole jurisdiction over the Blocked Funds.

b.      Owens Plaintiffs' Motion to Quash Levin Plaintiffs' Writ

The Owens Plaintiffs' argument centers on the purported superiority of their claim to the Blocked Funds over the Levin Plaintiffs'. It is not disputed that the Owens Plaintiffs filed their writ of attachment in this Court before the Levin Plaintiffs did. Levin, 523 F. Supp. 3d at 18. They thus reason that under D.C.'s "first in time" rule governing the priority of interests, their writ has priority over the Levins'. See Owens Mot. Quash at 12 (citing D.C. Code § 16-545). And because the unsatisfied amount of the Owens Plaintiffs' judgments approaches $1 billion, they in turn move to quash the Levin Plaintiffs' writ on the ground that there will be no funds remaining of the $9.98 million balance once the Owens Plaintiffs execute their interest. Id. at 13.

While it presents a fair assessment of the Blocked Funds' insufficiency to satisfy more than one group of Plaintiffs' claims, the Owens Plaintiffs' argument is premature. As discussed above, no party has moved for final disposition of the Funds. The Court stayed the deadline for seeking such condemnations during briefing of the instant Motions in anticipation of further briefing on the priority of interests before it. See Joint Schedule Ord. at 2. The Owens Plaintiffs' claim to the Blocked Funds, while authorized by law, still must satisfy D.C. procedures on the execution of that claim. See Fed. R. Civ. P. 69(a)(1). Should they fail to do so, or in the (unlikely) event that their outstanding judgment is satisfied before the execution process in this matter is complete, the Levin Plaintiffs might then hold the priority interest. The

Court will thus deny the Owens Plaintiffs' Motion to Quash and determine the priority of interests when that question is ripe.

c.        Crystal Holdings' Motion to Quash

Adopting a pox-on-both-their-houses approach, Crystal Holdings, the seller of the tanker, moves to quash both the Owens and Levin Plaintiffs' writs of attachment. Presenting a new take on the Funds' status, it asserts that "none of the parties are entitled to [the Blocked Funds] because they belong to Crystal, not to Taif or Iran." Crystal Mot. Quash at 1. Crystal Holdings contends that the Holman Fenwick law firm was acting as Crystal and Taif's "escrow agent" when it received the $9.98 million balance transfer from Taif and attempted to forward that sum to Crystal Holdings. Id. at 2. It further reasons that under escrow law, as soon as Crystal Holdings delivered the oil tanker to Taif and Taif transferred the balance to HFW the sale was "completed" and "title to those funds transferred to Crystal" at once. Id. at 3.

That argument stops at the water's edge. The very documents that Crystal Holdings cites as evidence of the escrow agreement among it, Taif, and HFW make clear that the escrow arrangement applied only to the $2.34 million deposit, not the $9.98 million balance at issue in this litigation.

The Engagement Letter among the three companies provides that HFW would "act[] as Deposit Holder, as defined in the [Memorandum of Agreement]" and would "(a) prepare the terms of an escrow agreement; (b) receive and hold the deposit in accordance with the escrow agreement; and (c) on completion of sale, or otherwise, release the deposit in accordance with the terms of the escrow agreement." ECF No. 58-1 (HFW Engagement Letter) at ECF p. 2. The MOA, in turn, defines the "Deposit" as 20% of the total purchase price — that is, the $2.34 million not at issue here. See ECF No. 58-4 (MOA) at ECF p. 2. It provides that the Deposit

23

shall be held in "Escrow Account held by . . . Escrow Agent" and only "released" to Crystal

Holdings "[o]n delivery of the [v]essel." Id. at ECF pp. 2–3.  An accompanying escrow

agreement outlines similar release conditions and HFW's obligations regarding the 20% deposit.

See ECF No. 58-2 (Escrow Agreement).

Notably absent from these documents is any comparable escrow framework for the

balance of the purchase price — that is, the $9.98 million at issue.  The MOA's reference to the

balance states only that it "shall be paid in full."  MOA at ECF p. 3.  It provides that the deposit,

by contrast, shall be "released" — i.e., from escrow — on the sale's completion.  Id.  Unlike the

deposit, the balance is not defined as escrow property, is not required to be lodged in an escrow

account, and is not made subject to the Escrow Agreement's release mechanics.

The Engagement Letter's "Additional Fees" provision reinforces this distinction.  It

contemplates that if HFW "[we]re required following the date of this letter of engagement to also

hold the balance of the purchase price and/or any other amount due from [Taif] to [Crystal]

under the MOA," additional fees would apply.  See HFW Engagement Letter at ECF p. 4.  But

that clause does not specify that the balance would be held in escrow, nor does it incorporate the

existing escrow agreement or establish new escrow conditions governing the balance.  Further

supporting the intent to treat the deposit and the balance differently, Taif and Crystal later

amended the MOA to provide that Taif would "provide [HFW] with original release instructions

in favo[]r of [Crystal] of the 20 percent deposit."  MOA at ECF p. 15.  The amendment, like

other provisions, addresses release of the Deposit but does not reference any escrow arrangement

for the remaining purchase price, which would become the Blocked Funds.

Because the record shows that the parties' escrow agreement covered only the $2.34

million deposit, not the remaining balance, the Court holds that HFW was not acting as Crystal

Holdings' escrow agent when Taif transferred the Blocked Funds.  It therefore need not reach the parties' arguments surrounding the law of the case, the application of escrow law, or the timeliness of Crystal Holdings' intervention into these proceedings.  The Court will thus deny the Motion to Quash the Levin and Owens Plaintiffs' writs of attachment.

## IV.    Conclusion

For the foregoing reasons, the Court will deny the Levin Plaintiffs' Motion to Transfer and Quash the Owens Plaintiffs' writs.  It will also deny the Owens Plaintiffs' Cross-Motion to Quash the Levin Plaintiffs' writs and Crystal Holdings' Motion to Quash both the Levin and Owens Plaintiffs' writs.  Last, the Court will grant the Government's Motion to Deposit Funds, subject to the conditions requested by Wells Fargo.  A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 31, 2026